Filer's Name, Address, Phone, Fax, Email:

RUSH MOORE LLP
A Limited Liability Law Partnership

SUSAN TIUS  2873-0
737 Bishop Street, Ste. 2400
Honolulu, Hawaii  96813-3862
Tel. No. 521-0406;  Fax No. 521-0497;  Email: Stius@rmhawaii.com

Attorney for Ke Kailani Partners, LLC



**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF HAWAII**
1132 Bishop Street, Suite 250
Honolulu, Hawaii 96813

hib_4001-1cs  (12/09)

| | |
|---|---|
| *Debtor:*  Ke Kailani Development LLC | *Case No.:*  **11-00019** |
| *Joint Debtor:* (if any) | *Chapter:*  **11** |

| | |
|---|---|
| **COVER SHEET - MOTION FOR RELIEF FROM STAY** <br> *Instructions:*  Complete A. for all motions.  Complete B. if seeking to enforce security interest.  Complete C. if motion concerns a lease.  Complete D. for other types of relief.  Complete E. if seeking extraordinary relief. | *Hearing Date:* **February 23, 2011** <br> *Time:*  **1:30 PM** |

**A. Relief sought under**  ☑ 11 U.S.C. § 462(d) 362(d) – Automatic Stay     ☐ 11 U.S.C. § 1301(c) – Chapter 13 Codebtor Stay

Movant:  Ke Kailani Partners, LLC

Role (mortgagee, lessor, agent, plaintiff, etc.):  Lender, Mortgagee            ☐ Debtor's principal residence

Subject Matter (real/personal property, litigation, etc.):Ke Kailani Project, South Kohala, and related personal property
(use address/TMK/vehicle ID, etc.)           (*TMKs listed below)

If pending litigation, last major prepetition event:Postponement of Commissioner's foreclosure auction scheduled for 1/6/2011,
(decree of foreclosure, writ of possession, etc.)    and Debtor's Notice of Appeal filed 12/30/2011

| **B. Security Interest (mortgage, lien, etc.)** | Movant's lien position (1st, 2nd, etc.):  1st |
|---|---|
| Date of loan:  July 2005, July 2006 | Maturity date:  July 2009 |

| | | |
|---|---|---|
| Original amt: $  42,000,000 | Principal bal: $ 22,227,726 | Interest, late fees, etc.: $6,434,031 |
| Monthly pmt: $  Immediately Due | Prepetition arrears: $ 28,661,759 | Postpetition arrears: $ 9261.55/day |

| Debtor's valuation in schedules: $ 43,000,000 | Movant's valuation (if different): $ unknown |
|---|---|

| List all encumbrances: | Sr. lien: County of Hawaii (statutory priority) | $ | 838,987** |
|---|---|---|---|
| | 2nd lien: Movant Ke Kailani Partners | $ | 28,661,759** |
| | Total other liens: Community Associations | $ | 618,759** |
| | Add all liens ............................................................................ | $ | 30,119,495 |

| **C. Lease** | Date of lease: | Payment: $             per |
|---|---|---|
| Prepetition arrears: $ | | Postpetition arrears: $ |

**D. Other**      Describe relief sought, title of action and court of any litigation, and any applicable insurance:
To proceed with pending judicial foreclosure action in Ke Kailani Partners, LLC v. Ke Kailani Development, et al., and
Debtor's appeal of a judgment entered in foreclosure action.  See Foreclosure Decree, September 1, 2010, Civ. No.
09-1-2523-10, First Circuit Court, Hawaii.

**E. Extraordinary relief requested:**     ☐ Retroactive relief     ☐ "in rem" relief     ☑ No stay of order

The above information summarizes allegations in attached motion.     /s/ _____ Susan Tius
                                                                                                      For Movant

\* Including TMKs 6-8-36-1, -2, -5, -11 to -14, -16 to -20, -26, -27, and -30 through -41, 6-8-36-16-2, -4, -5, -6 to 12.
\*\* Plus accruing interest, penalties, attorneys' fees, and/or other chargeable costs. Note that all figures herein are approximated
using available data.

RUSH MOORE LLP
A Limited Liability Law Partnership
SUSAN TIUS                    2873-0
737 Bishop Street, Ste. 2400
Honolulu, Hawaii 96813-3862
Telephone No.: (808) 521-0406
Facsimile No.: (808) 521-0497
E-mail: stius@rmhawaii.com

STARN O'TOOLE MARCUS & FISHER
A Law Corporation
TERENCE J. O'TOOLE          1209-0
SHARON V. LOVEJOY          5083-0
RICHARD J. WALLSGROVE 9054-0
733 Bishop Street, Suite 1900
Honolulu, Hawaii  96813
Ph: (808) 537-6100
E-mail: Totoole@starnlaw.com
E-mail: Slovejoy@starnlaw.com
E-mail: Rwallsgrove@starnlaw.com

Attorneys for KE KAILANI PARTNERS LLC

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| In Re | Case No. 11-00019 |
|---|---|
| | (Chapter 11) |
| KE KAILANI DEVELOPMENT LLC | |
| | SECURED CREDITOR KE KAILANI PARTNERS, LLC'S **MOTION FOR RELIEF FROM STAY** TO PROCEED WITH FORECLOSURE ACTION AND APPEAL; MEMORANDUM IN SUPPORT OF MOTION; DECLARATION OF BARRY SHAMES IN SUPPORT OF MOTION; DECLARATION OF RICHARD J. WALLSGROVE IN |
| Debtor. | |

387433

SUPPORT OF MOTION;
EXHIBITS 1 - 9.

Hearing
Date:   February 23, 2011
Time:  1:30 p.m.
Judge:  Honorable Robert J. Faris

### SECURED CREDITOR KE KAILANI PARTNERS, LLC'S MOTION FOR RELIEF FROM STAY TO PROCEED WITH FORECLOSURE ACTION AND APPEAL

Secured Creditor KE KAILANI PARTNERS LLC ("Lender") moves this Court as follows:

1.      For relief from the automatic stay to proceed with a pending judicial foreclosure action against KE KAILANI DEVELOPMENT LLC ("Debtor"), the above-named debtor-in-possession, and with exercise of Lender's rights relating to the Debtor's mortgaged Property[1] known as the Ke Kailani Subdivison at the Mauna Lani Resort, located in the District of South Kohala on the Island of Hawaii.   This request to proceed is subject to there not being entry of, or enforcement against the Debtor of, any deficiency judgment without further order of this Court; and

---

[1]  Such mortgaged "Property" is more specifically defined in the attached memorandum in support, and exhibits.  It includes Debtor's interest in real and personal property, in which Lender has a security interest.

2.     For relief from the automatic stay, if any, to proceed, as appellee, in a pending appeal filed by the Debtor, as appellant, of the summary judgment and interlocutory decree of foreclosure entered in the judicial foreclosure action against the Debtor and the mortgaged Property, including seeking the Debtor's posting of a bond during the pendency of the appeal as a condition to stay the foreclosure auction previously scheduled for January 6, 2011 and action to confirm and close the foreclosure sale.

Lender further requests that the fourteen day stay imposed by Fed. R. Bankr. P. 4001(a)(3) not apply, and that any Order granting this Motion be enforceable immediately upon its entry because of the risk to and deterioration of Lender's interest in the Property with the passage of time.

This Motion is made pursuant to 28 U.S.C. § 157(a), Rule 4001(a)(1) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 362(d)(1), LBR 4001-1, the Memorandum in Support of Motion, Declaration of Richard J. Wallsgrove in Support of Motion; Declaration of Barry Shames in Support of Motion; the attached exhibits; the records and files in the case; and such other and further matters as may be presented herein.

DATED: Honolulu, Hawaii, January 24, 2011.

/s/Susan Tius
SUSAN TIUS

/s/ Sharon Lovejoy
TERENCE J. O'TOOLE
SHARON V. LOVEJOY
RICHARD J. WALLSGROVE

Attorneys for KE KAILANI
PARTNERS LLC

UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In Re | Case No. 11-00019 |
| | (Chapter 11) |
| KE KAILANI DEVELOPMENT LLC | |
| | MEMORANDUM IN SUPPORT OF |
| Debtor. | MOTION |

**Table of Contents**

Page

I.   SUMMARY AND INTRODUCTION.................................................................1

II.  CASE AND PROPERTY BACKGROUND.......................................................8

    A.   The "Infrastructure Loan," July 2005 .................................................8

    B.   The "Villas Loan," July 2006...............................................................9

    C.   Extensions of the Loans in 2008 and 2009, and Debtor's
        Default. ...............................................................................................10

    D.   Foreclosure Action – Summary Judgment and Foreclosure
        Decree Entered Against Debtor...........................................................11

    E.   Assignment of the Loans to Ke Kailani Partners, LLC. .....................12

    F.   The Debtor's Actions Continue to Threaten to the Lender's
        Interest in the Property.  Taxes Are Unpaid.  Ongoing
        Maintenance and Other Costs Must Be Covered. ...............................13

    G.   Debtor's Bankruptcy Petition and Schedules Demonstrate
        that Debtor's Only Asset is the Foreclosed Property, and
        that the Bankruptcy Petition Is Merely a Tactical Attempt

to Avoid Posting a Bond in Connection with the
Foreclosure Appeal ............................................................................15

III. ARGUMENT ...........................................................................................17

    A.     The Automatic Stay Should Be Lifted Under § 362(d)(1),
Because Lienholders Are Not Adequately Protected .........................17

    B.     The Automatic Stay Should Be Lifted Because There is
Cause, Including  the Fact That Debtor's Bankruptcy
Filing Meets Every Criteria For a "Bad Faith" Filing. ......................20

IV. CONCLUSION .........................................................................................24

# Table of Authorities

**Cases**

C-TC 9th Ave. P'ship v. Norton Co., 113 F.3d 130 (2d Cir. 1997) .......................21

In re Arnold, 806 F.2d 937 (9th Cir.1986)..................................................20

In re Development, Inc., 36 B.R. 998 (Bankr. Haw. 1984)....................................19

In re Dixie Broadcasting, Inc., 871 F.2d 1023 (11th Cir. 1989)............................20

In re Laguna Assocs. Ltd. Partnership, 30 F.3d 734 (6th Cir. 1994)............... 20, 23

In re Murel Holding Corp., 75 F.2d 94 (2d Cir. 1935)...........................................19

In re Springs Hospitality, Inc., 2006 WL 2458679 (Bankr. D. Co. 2006) ....... 21, 22

State Street Houses, Inc. v. New York State Urban Dev. Corp., 356 F.3d 1345
 (11th Cir. 2004)..............................................................................21

Udall v. FDIC , 91 F.3d 1414 (10th Cir. 1996) ......................................21


**Statutes**

11 U.S.C. § 361 ...............................................................................18

11 U.S.C. § 362(d)(1).....................................................................1, 17

11 U.S.C. § 362(d)(3).........................................................................16

11 U.S.C. § 362(g) ...........................................................................18


**Other Authorities**

Collier on Bankruptcy P362.07[3][a] (15th ed. rev. 2007).....................................18

Collier on Bankruptcy P362.07[3][d](15th ed. rev. 2007) .....................................19


**Rules**

Fed. R. Bankr. P. 4001(a)(3)....................................................................24

i

<u>**MEMORANDUM IN SUPPORT OF MOTION**</u>

Secured Creditor KE KAILANI PARTNERS LLC ("**Ke Kailani Partners**") submits this Memorandum in Support of Secured Creditor Ke Kailani Partners LLC's Motion for Relief from Stay to Proceed with Foreclosure Action and Appeal, filed herewith.

## I. SUMMARY AND INTRODUCTION

On January 5, 2011, KE KAILANI DEVELOPMENT LLC, a Hawaii limited liability company ("**Debtor**"), the above-named Debtor, filed its Chapter 11 Petition and is a debtor-in-possession. The filing stayed a judicial foreclosure auction scheduled for the next day, January 6, 2011. Debtor currently owes Ke Kailani Partners approximately $29 million. The Debtor's obligations to Ke Kailani Partners under the loan documents is secured by mortgages on the Debtor's Property. Under 11 U.S.C. § 362(d)(1), this Motion for relief from the automatic stay should be granted for either of two reasons:

(1) The motion should be granted because Debtor has failed to provide adequate protection for Ke Kailani Partners' interest in the subject property, such that Ke Kailani Partners' interest is being eroded: (i) by the accrual of senior encumbrances, (ii) by additional daily accrual of interest and other costs, and (iii) by ongoing physical deterioration. More specifically, Debtor has failed to pay real property taxes for approximately two years, creating a growing lien with statutory

priority over Ke Kailani Partners' lien. Currently, more than $655,000 is owed, accruing interest and penalties. In a few short weeks, the next payment of $183,000 will be due, and then additional interests and penalties for non-payment by the Debtor. Also, under the court-ordered foreclosure decree, Debtor accrues more than $9261 in daily interest charges, plus other costs chargeable under Ke Kailani Partner's lien. On top of these growing encumbrances, Debtor has failed to pay dues to associations connected to the subject property. As a result, those associations have been forced to drastically reduce maintenance and services to the property, causing physical deterioration which is further eroding the value of Ke Kailani Partners' interest.

(2) The Motion should also be granted for cause, including the fact that the timing and all other circumstances of Debtor's eve-of-foreclosure bankruptcy filing indicate that the filing was made in bad faith. Debtor has no assets, debts, or ongoing business, other than its interest in the foreclosed property. The apparent intention of the bankruptcy filing was to protect Debtor's sole member, Mr. Michael J. Fuchs, from a deficiency judgment against him, individually, in the foreclosure action, and to avoid posting a bond to stay the foreclosure proceeding pending appeal of the foreclosure decree.

As described in more detail below, the judicial foreclosure action stems from two secured Loans made to Debtor. The Loans were made to finance the Debtor's development of a project featuring approximately 40 single-family home lots and 12 condominium units located within the Mauna Lani Resort, Kohala, Hawaii (the "**Project**"). A few of the lots/units have been sold, but Debtor still owns most of the Project—28 of the original lots in the Project,[2] and 10 of the condominium units, remain unsold.[3] These unsold lots/units comprise all of the Debtor's existing real property (the Debtor's "**Real Property**").[4]

The Debtor entity was formerly known as Michael J. Fuchs Development, LLC, although the name was later changed to Ke Kailani Development LLC (not to be confused with the movant, Ke Kailani *Partners*). Mr. Michael J. Fuchs is the

---

[2] Including TMKs 6-8-36-1, -2, -5, -11, -12, -13, -14, -16, -17, -18, -19, -20, -26, 27, and -30 through -41.

[3] Including TMKs 6-8-36-16-2, -4, -5, -6, -7, -8, -9, -10, -11, -12.

[4] This Real Property, which together with other collateral such as related leases, rents, furnishings, development rights, related proceeds, and other personal property, comprises the "**Property**" mortgaged by the Debtor. That Property is the subject of the pending foreclosure action, and is more fully described in the loan documents described herein.

sole member of the Debtor.[5]  Mr. Fuchs personally guaranteed the Debtor's full

payment and performance of all obligations under the Loans.[6]

Since at least July 2009, the Loans have been in default.  In October 2009,

the lenders filed a foreclosure action to foreclose on the Property.  In September

2010, the First Circuit Court, State of Hawaii, entered a Foreclosure Decree in

favor of the lenders, confirming the foreclosure commissioner's power to auction

the Debtor's Property, and confirming the lenders' right to a deficiency judgment

against Mr. Fuchs.[7]  The Foreclosure Decree also confirmed that Debtor's unpaid

principal amount due on the two loans is approximately $22.2 Million, with more

than $6.4 Million additional due in accrued unpaid interest and late charges.[8]  The

---

[5] See Exhibit 7, Debtor's Statement of Financial Affairs, at 9 (listing Michael J. Fuchs as the 100% member of Debtor).

[6] See Exhibit 1, ¶ 15 at 8, ¶ 32 at 13, Findings of Fact, Conclusions of Law, and Order Granting Plaintiffs' Motion for Summary Judgment and Decree of Foreclosure Filed April 22, 2010, entered September 1, 2010 in the Foreclosure Action. Civ. No. 09-1-2523-10 (BIA), First Circuit Court, State of Hawaii (the "**Foreclosure Decree**" filed in the **Foreclosure Action**"); see also Complaint filed October 27, 2009, in the Foreclosure Action (Exhibit E thereto, Guaranty and Indemnification dated July 6, 2005).

[7] See Exhibit 1, ¶ 5 at  20 ("Plaintiffs are entitled to a deficiency judgment in favor of Plaintiffs and against Fuchs, individually, for the difference between the amount owed to Plaintiffs under the Infrastructure Loan Documents and the Villas Loan Documents, and the foreclosure sale proceeds applied thereto."); see also Exhibit 2, Judgment, entered September 1, 2010 in the Foreclosure Action;  Exhibit 3, First Amended Judgment, entered November 15, 2010 in the Foreclosure Action.

[8] See Exhibit 1, Foreclosure Decree, at ¶¶ 47-48 at 17-18.  The Foreclosure Decree specifies $22,227,727 in combined principal due under the loans, with an

Court found that the lenders' liens are "valid, and senior and superior [to other liens] (except as to any priority lien pursuant to statute."[9]  The Loans were assigned by the original lenders in November 2010, and are now held by the movant, Ke Kailani Partners.[10]

On the eve of the foreclosure auction, the Debtor's bankruptcy petition was filed, signed by Mr. Fuchs.  Several days prior, Mr. Fuchs and Debtor had filed an untimely notice of appeal of the foreclosure decree.  Mr. Fuchs and debtor failed to file any bond in connection with that appeal, and did not seek a stay of the Foreclosure Decree.  Thus the appeal did not stay the foreclosure auction.

---

additional $3,887,104 in interest and late charges accrued through 4/14/10.  The foreclosure decree also specified $9,261.55 in per diem interest to the date of payment.  See id.  For the approximately 275 days from 4/1/10 to 1/5/11, this amounts to an additional $2,546,927 in accrued interest.  The Foreclosure Decree also notes that additional late charge, advances, interest, expenses, and attorneys' fees incurred by the lenders are owed by Debtor and/or Mr. Fuchs.  See Exhibit 1, ¶¶ 47-48 at 18; see also Debtor's Schedule D, filed January 19, 2011 (Exhibit 8) (listing $26,114,860.79 as the face value of the movant's secured claim on the two Loans, with "undetermined unsecured defici[e]ncy amounts").

[9] See Exhibit 1, ¶ 20 at 10, and ¶ 42 at 16 ("The mortgage liens and security interests of the Lenders and Plaintiff BOH as agent for the Lenders under the above-described [loan] documents . . . are valid,, and senior and superior to each and every party defendant's interest, if any, in the properties and the other collateral described in the [loan documents] (except as to any priority lien pursuant to statute.").

[10] See Exhibit 4, Plaintiffs' Motion for Substitution of Parties, filed December 6, 2010 in the Foreclosure Action; see also Exhibit 5, Order Granting Plaintiffs' Motion for Substitution of Parties, filed December 6, 2010, entered December 30, 2010 in the Foreclosure Action.

Meanwhile, the actions of Mr. Fuchs and Debtor threatens the Ke Kailani Partners' interest in the collateral. For example, Debtor has failed to pay property taxes on the Real Property for approximately two years, resulting in a lien for approximately $655,146 and growing, in favor of the County of Hawaii. With each passing tax deadline this lien continues to grow, with priority over the Ke Kailani Partners' lien. An additional $183,841 is due in February 2011, with additional penalties and interest to accrue for non-payment.[11]

On top of that senior encumbrance, Debtor also accrues $9,261 in daily interest charges, plus additional costs and expenses chargeable to Debtor under Ke Kailani's lien.[12]

And compounding the growing encumbrances, Debtor is also causing the value of Ke Kailani Partnership's interest to erode through physical deterioration of the Property. Mr. Fuchs and Debtor have long failed to pay the association dues and assessments connected to the Real Property (more than $618,759 in arrears, and growing).[13] This non-payment of dues is causing deteriorating physical

---

[11] See Wallsgrove Dec. ¶ 14; see also Debtor's Schedule E filed January 19, 2011 (Exhibit 8) (listing $833,079 due to Hawaii County).

[12] See Exhibit 1, Foreclosure Decree, at ¶¶ 47-48 at 17-18 (specifying per diem interest of $9,261.55 to the date of payment), plus other fees, expenses, and costs.

[13] See Exhibit 8, Debtor's Schedule F filed 1/19/2011 (listing $618,759 due to the associations; see also Declaration of Barry Shames ("Shames Dec.") ¶ 5 (noting that the delinquent amount owed to one of the associations, Ke Kailani Community

maintenance of the property, and it hampers the associations' ability to pay for ongoing costs.[14]

The Debtor's Schedules, filed January 19, 2011 confirm that the Debtor's only substantial asset is the Real Property in the Project, the only creditors are connected to the Real Property, and the Debtor has no income. It is thus readily apparent that the Debtor has no ongoing business, assets or debts, other than those tied to the Real Property. The only substantial dispute is that related to the Loans and the related foreclosure of the Real Property, with Debtor on one side, and Ke Kailani Partners on the other. That dispute is encompassed within the Foreclosure Action.

The bankruptcy petition appears to be little more than a tactical attempt to stall the foreclosure auction during the appeal, and delay any deficiency judgment against Mr. Fuchs individually, without filing the necessary bond with the state courts.

---

Association, was $591,059.50 as of January 5, 2011, and accruing at a rate of $38,652,84 per month).

[14] See Shames Dec., ¶¶ 6-8.

## II. CASE AND PROPERTY BACKGROUND

### A.     The "Infrastructure Loan," July 2005

In July 2005, Bank of Hawaii, Central Pacific Bank, and Finance Factors, Ltd. agreed to loan $42 Million dollars to Debtor and Ke Kailani Corp.[15]  The loan was evidenced and secured through a variety of documents and filings, including a note, mortgage, assignment of sales proceeds, and financing statement (the "Infrastructure Loan").[16]

The mortgage attached to the borrower's interest in the Project, such that the collateral included the land and all buildings and improvements on the land, along with the incidental leases, rents, furnishings, development rights, and related proceeds.[17]

---

[15] See, e.g., Exhibit 1, ¶ 10 at 6.  Ke Kailani Corp. is now dissolved.  See id. ¶ 26 at 11.

[16] See id. ¶¶ 11—15, at 7-8.  Note also that many corresponding loan documents were attached as exhibits to the lenders' Complaint, filed October 27, 2009 in the Foreclosure Action ("**Complaint**").  See, e.g., Exhibit A to Foreclosure Complaint, Promissory Note dated July 6, 2005; Exhibit B to Foreclosure Complaint, Mortgage, Security Agreement and Financing Statement, recorded in the Hawaii Bureau of Conveyances on August 2, 2005; Exhibit C to Complaint, Assignment of Sales Contracts and Sales Proceeds, recorded in the Hawaii Bureau of Conveyances on August 2, 2005; Exhibit D to Complaint, UCC Financing Statement, recorded in the Hawaii Bureau of Conveyances on August 2, 2005.

[17] See Exhibit 1, ¶ 12 at 7; see also Exhibit B to Complaint, Mortgage, Security Agreement and Financing Statement, recorded in the Hawaii Bureau of Conveyances on August 2, 2005.

Approximately one year later, the borrowers and lenders entered into a loan modification agreement, which among other things, amended and confirmed the principal amount due under the loan to be approximately $26.5 Million.[18]

## B.     The "Villas Loan," July 2006

Around the same time as the 2006 loan modification, the lenders made an additional loan to the borrowers, in the principal amount of approximately $28.4 Million, to facilitate further development of the Property (the "Villas Loan").[19]  As with the original loan, this loan was evidenced and secured through a variety of loan documents and filings.[20]  The collateral included the new condominium units to be developed.   Mr. Fuchs again personally guaranteed full payment and performance of all obligations under the loan.[21]

---

[18]     This amended amount constituted an increase in the loan amount, by approximately $9 Million, because by the time of the loan modification, the principal amount due had been reduced from the original $42 Million by payment of principal.  See id. ¶ 17 at 9; see also Exhibit G to Complaint, Amended and Restated Promissory Note, dated July 31, 2006.

[19] See Exhibit 1, ¶ 27 at 11; see also Exhibit I to Complaint, Promissory Note dated July 31, 2006;

[20] See Exhibit 1, ¶¶ 28-31 at 11-13; see also Exhibit J to Complaint, Mortgage, Security Agreement and Fixture Filing, recorded in the Hawaii Bureau of Conveyances on August 7, 2006; Exhibit K to Complaint, Assignment of Sales Contracts and Sales Proceeds, recorded in the Hawaii Bureau of Conveyances on August 7, 2006; Exhibit L to Complaint, UCC Financing Statement, recorded in the Hawaii Bureau of Conveyances on August 7, 2006.

[21] See Exhibit 1, ¶ 32 at 13; see also Exhibit M to Complaint, Guaranty and Indemnification, dated July 31, 2006.

### C. Extensions of the Loans in 2008 and 2009, and Debtor's Default.

In February 2007, Mr. Fuchs and the borrowers and the lenders agreed to another loan modification, which amended the principal amount due under the Villas Loan to approximately $25.7 Million. The February 2007 modification also cross-collateralized and further secured the Villas Loan with the collateral for the Infrastructure Loan, and vice-versa. As with the original loans, the modification was evidenced through various loan documents and filings.[22]

Thereafter, several additional loan modifications and extensions were granted in 2008 and 2009.[23] In connection with those modifications and extensions, Mr. Fuchs re-confirmed his guarantee of the two Loans. With the 2008 and 2009 modifications, the maturity date on the Loans was extended to July 2009. However, the Mr. Fuchs and the Debtor failed to comply with their obligation to fully repay the Loans.

---

[22] See Exhibit 1, ¶¶ 34-36 at 13-15; see also Exhibit O to Complaint, Second Amendment to Mortgage and Assignment [of Infrastructure Loan], recorded in the Hawaii Bureau of Conveyances on February 20, 2007; Exhibit P to Complaint, Amendment to Mortgage and Assignment [of Villas Loan], recorded in the Hawaii Bureau of Conveyances on February 20, 2007.

[23] See Exhibit 1, ¶¶ 37-39 at 15; see also Exhibit Q to Complaint, Loan Modification and Confirmation Agreement, dated September 15, 2008; Exhibit O, Loan Modification Agreement, dated March 5, 2009.

### D.    Foreclosure Action – Summary Judgment and Foreclosure Decree Entered Against Debtor.

In October 2009, the Lenders sent a letter to Mr. Fuchs and Debtor notifying them of their default, and demanding immediate payment of the entire unpaid amounts due.[24]  Those amounts remaining unpaid, the Lenders filed a foreclosure action on October 27, 2009 in the First Circuit Court of the State of Hawaii (the "Foreclosure Action").[25]  Mr. Fuchs and the Debtor answered the complaint, and asserted counterclaims for alleged breach of contract and other claims.[26]  Those counterclaims were rejected, and the Foreclosure Decree was granted.

---

[24] See Exhibit 1, ¶ 40 at 16; see also Exhibit T to Complaint, Letter Dated October 1, 2009.

[25] See Complaint.

[26] See Ke Kailani Development LLC and Michael J. Fuch's First Amended Answer and Counter Claim, filed December 23, 2009 in the Foreclosure Action.  Mr. Fuchs and the Debtor also filed a third-party complaint seeking to vacate an earlier arbitration award.  That previous arbitration matter concerned a complaint by a lot/unit owner in the project.  The lot/unit owner alleged that that Mr. Fuchs and the Debtor had improperly amended the Villas project condominium documents in an attempt to permit timesharing of units, so that they could sell the project to Monogram Real Estate Acquisitions.  The arbitrator enjoined  timesharing within the project, and the arbitration award against the Debtor was confirmed by the First Circuit Court, State of Hawaii, in October 2009.

Mr. Fuchs and the Debtor also filed a fourth-party complaint related to removing the Villas development from the condominium property regime.  For the purpose of this motion, these third- and fourth-party complaints will be included within the phrase "counterclaims."

On June 2, 2010, the First Circuit Court granted the lenders' Motions for Summary Judgment and Foreclosure Decree.[27]  On September 1, 2010, the First Circuit Court entered Findings of Fact, Conclusions of Law, Orders, and Judgments granting Lenders' Motions for Summary Judgment.[28]  The Court issued a First Amended Final Judgment on November 15, 2010.  More than a month later, well beyond the deadline to object to the Amended Judgment, debtor filed a notice of appeal.[29]  That appeal ostensibly challenges the original judgment filed in September 2010.  The appeal was filed on December 30, 2010.  The Hawaii Intermediate Court of Appeals has not yet decided whether to take jurisdiction, and there is no activity in the appeal pending transmission of the record to the appellate court.

### E.    Assignment of the Loans to Ke Kailani Partners, LLC.

Effective November 30 2010, after the original Lenders had spent more than a year handling the Foreclosure Action and trying to get Mr. Fuchs and the Debtors to comply with their obligations under the Infrastructure Loan and Villas Loan, the Lenders' interest in the promissory notes and other Loan documents were assigned to Hawaii Renaissance Builders LLC.  Hawaii Renaissance Builders LLC and

---

[27] See June 2, 2010 Minute Order, in the Foreclosure Action.

[28] See Exhibit 1.

[29] See Exhibit 6, Notice of Appeal filed December 30, 2010 in the Foreclosure Action.

shortly afterwards was further assigned to Ke Kailani Partners, LLC. The First Circuit Court subsequently approved the substitution of Ke Kailani Partners LLC in place of the Lenders in the Foreclosure Action.[30]

### F. The Debtor's Actions Continue to Threaten to the Lender's Interest in the Property. Taxes Are Unpaid. Ongoing Maintenance and Other Costs Must Be Covered.

The County of Hawaii filed an answer in the Foreclosure Action, indicating that the Debtor and Mr. Fuchs had allowed the Property to accrue more than $370,000 in unpaid real property taxes, penalties, and interest.[31] The County asserted that this created a lien against the property, senior to the Lenders' lien. Since that time, the amount unpaid to the County for real property taxes continues to grow (now approximately $655,146).[32] In a few short weeks, the next tax due date will come and go. The additional tax amount due in February 2011 is $183,841.[33] And in addition to this senior encumbrance, Debtor also accrues $,9261 in daily interest, plus other costs and expenses chargeable under Ke Kailani Partners' lien.

---

[30] See Exhibit 5, Order Granting Plaintiffs' Motion for Substitution Filed December 6, 2010, entered December 30, 2010 in the Foreclosure Action.

[31] See County of Hawaii's Answer, filed November 16, 2009 in the Foreclosure Action.

[32] See Wallsgrove Dec., ¶ 14; *see also* Debtor's Schedule E filed January 19, 2011 (Exhibit 8) (listing $833,079 due to Hawaii County).

[33] See id.

Three community/condominium associations charged with maintaining the Property (the "Associations") also answered the complaint, and alleged that the Debtor had allowed its lots/units to accrue more than $137,000 in unpaid Association assessments and late charges.[34]  The Associations asserted that this allowed them to foreclose on those units/lots, and accordingly sought a portion of the proceeds in the foreclosure sale.

Since the time of the Associations' answer, Mr. Fuchs and the Debtor continue to neglect the necessary payments to the Associations.  The current amount due is estimated to exceed $618,759, and growing.[35]  Because Debtor's Real Property comprises such a large portion of the Project,[36] its failure to pay dues has placed "severe financial constraints" on the Associations, and threatens the lienholders' adequate protection in the property.[37]  For example, one of the Associations (the Ke Kailani Community Association, "KKCA") reports that it has been forced to drastically reduce maintenance and services for the Project.  This

---

[34] See Mauna Lani Resort Association, Ke Kailani Community Association, and Association of Villa Owners' Answer, filed February 1, 2010 in the Foreclosure Action.

[35] See Debtor's Schedule F, filed January 19, 2011 (Exhibit 8) (listing Association claims for $618,759.10); see also Shames Dec., ¶ 5 (stating that Debtor is $591,059.50 delinquent to Ke Kailani Community Association, accruing at $38,652.84 per month).

[36] For example, Debtor represents approximately 76% of the Ke Kailani Community Association.  See Shames Dec., ¶ 4.

[37] See Shames Dec., ¶ 6.

includes maintenance of lush landscaping, extensive sand paths, and an oceanfront grotto with a luxury pool, two Jacuzzis, and related facilities.[38] The condition of the landscaping and facilities has deteriorated and continues to deteriorate because of the Debtor's failure to pay its share of the dues. Because the Debtor's unpaid share comprises such a large portion of the dues, KKCA reports that it has been forced to tap into reserve just to cover the cost of the reduced maintenance.[39] KKCA is the second largest creditor[40] listed on the Debtor's schedules (listed at $582,916), and supports this Motion seeking relief from the automatic stay, to permit the pending foreclosure auction to proceed.[41]

### G. Debtor's Bankruptcy Petition and Schedules Demonstrate that Debtor's Only Asset is the Foreclosed Property, and that the Bankruptcy Petition Is Merely a Tactical Attempt to Avoid Posting a Bond in Connection with the Foreclosure Appeal.

When Debtor appealed, no bond was filed to stay the foreclosure decree. Thus, the appeal did not forestall the foreclosure auction of the Property, and that auction was scheduled for January 6, 2011 by the foreclosure commissioner, George Van Buren, Esq. Instead, literally on the eve of the foreclosure auction, Mr. Fuchs filed the Debtor's bankruptcy petition. The Debtor's Schedules filed

---

[38] See id. ¶¶ 7-8.

[39] See id. ¶ 6.

[40] Other than the Hawaii County tax lien.

[41] See id. ¶ 10.

January 19, 2011 confirm that the Debtor's only substantial asset is the Real Property in the Project,[42] and all creditors are connected to that property.

- Other than the amount due on the Loans, and the property taxes, dues, and development costs related to the Real Property, the Schedules list only $6960 in creditors' claims – all of which also appear to be related to the Project.[43]

- Other than the Real Property, Debtor lists only $573,092 in personal property -- amounting to furnishings for the Project's sales office, a construction trailer and water tank at the Project, and models of the Project.[44]

- Debtor has no income, and no cash or deposits.[45]

It is thus readily apparent that the Debtor has no ongoing business, assets or debts, other than those tied to the Property. The bankruptcy petition appears to be little more than a tactical attempt to stall the foreclosure auction during the appeal, without filing the necessary bond with the state courts. The only real dispute here is centered on the Loans and the Property, with Fuchs/Debtor on one side, and Ke Kailani Partners on the other. That is the same ongoing dispute in the state foreclosure action.

In addition to this Motion for immediate relief from the automatic stay, Ke Kailani Partners is also filing a motion under 11 U.S.C. § 362(d)(3), for a declaration that Debtor is a single-asset real estate entity. Under § 362(d)(3), the

---

[42] See Exhibit 8, Debtor's Schedule A filed January 19, 2011.

[43] See Exhibit 8, Debtor's Schedule F filed January 19, 2011.

[44] See Exhibit 8, Debtor's Schedule B, filed January 19, 2011.

[45] See Exhibit 7, Debtor's Statement of Financial Affairs ¶¶ 1, 1, filed January 19, 2011; Exhibit 8, Debtor's Schedule B, ¶ 1.

automatic stay is terminated to allow action against the property unless the Debtor, by the later of 90 days after entry of filing of its voluntary petition or 30 days after the bankruptcy court determines that the bankruptcy is a single asset real estate case, either: (i) files a reorganization plan that has a reasonable possibility of being confirmed within a reasonable time or (ii) commences monthly payments to the secured creditor in an amount equal to interest at the then-applicable non-default contract rate of interest.

## III.    ARGUMENT

### A.    The Automatic Stay Should Be Lifted Under § 362(d)(1), Because Lienholders Are Not Adequately Protected.

11 U.S.C. § 362(d)(1)[46] provides that the Court shall grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest."  The use of the word "cause" as a grounds for relief from stay suggests an intention that the bases for relief from the stay should be broader than merely lack of adequate protection.  See Collier on Bankruptcy P362.07[3][a]

---

[46] 11 U.S.C. 362(d)(1) states:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(15th ed. rev. 2007).  Where there is a request for relief from the stay, the party

opposing relief has the burden on all issues except for the question of the debtor's

equity in property.  See 11 U.S.C. § 362(g).[47]

The Bankruptcy Code does not define the term "adequate protection."

However, § 361[48] gives examples of what might constitute adequate protection:  (i)

---

[47] 11 U.S.C. 362(g) states:
> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
>> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>> (2) the party opposing such relief has the burden of proof on all other issues.

[48] 11 U.S.C. 361 states:
> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503 (b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

the making of a cash payment or periodic cash payments to the extent necessary to compensate for any decrease in value of the interest of the party; (ii) providing an additional or replacement lien to the extent necessary to compensate for a decrease in value of the party's interest in property which requires a finding made that it is of an adequate value to constitute adequate protection; or (iii) other relief "as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property. "  The term "indubitable equivalent" should be applied narrowly and requires protection that will assure the creditor that its position will not be adversely affected by the stay.  See Collier on Bankruptcy P362.07[3][d](15th ed. rev. 2007) citing In re Murel Holding Corp., 75 F.2d 941, 942 (2d Cir. 1935).

The herein Debtor has not provided, and is unable to provide, adequate protection of Ke Kailani Partner's interest in the Property.  The insufficiencies include the following:

1.  The value of Ke Kailani Partner's interest in the property is eroding via the continuous increase in the daily interest and other costs chargeable to Debtor under the lien.  See, e.g., In re Development, Inc., 36 B.R. 998 (Bankr. Haw. 1984) (finding lack of adequate protection where payments were not being made to the creditor by the Chapter 11 debtor).

2.  There is approximately $655,146 owed in delinquent real property taxes, plus accruing interest thereon.  In addition, the next real property tax deadline will accrue shortly in February 2011, when an additional $183,841

is due.  Unpaid, that tax deadline will impose additional penalties, and begin accruing additional interest.  The existing and accruing amounts owed to the County of Hawaii enjoy statutory priority over Ke Kailani Partners' otherwise senior lien.

3.  There are liens claimed against the Property which are junior in priority to Lender's mortgage lien, including liens in favor of the Associations connected to the Project, estimated at more than $618,000.  The Debtor's delinquency in payment of fees owed to the Association has created serious financial distress for the Associations.  If there is to be adequate protection of Lender's interest in the Property, the amounts owed to the Association, while junior in priority, as a practical matter will have to be addressed by funding of Association expenses reasonably necessary to restore, preserve and maintain the Property.

4.  The existing and continuously deteriorating condition of the facilities and landscaping at the Project, caused by Debtor's non-payment of dues owed on the Real Property, will take time and will the incur additional expense to repair and correct.  Such deterioration is thus diminishing the value of the Property.

**B.    The Automatic Stay Should Be Lifted Because There is Cause, Including the Fact That Debtor's Bankruptcy Filing Meets Every Criteria For a "Bad Faith" Filing.**

Relief from the stay may be granted when the court finds that there is "cause," including when the debtor commenced the case in bad faith.  See, e.g., In re Laguna Assocs. Ltd. Partnership, 30 F.3d 734, 737 (6th Cir. 1994) (citing, for example,  In re Arnold, 806 F.2d 937, 939 (9th Cir.1986) ("The debtor's lack of good faith in filing a bankruptcy petition has often been used as cause for removing the automatic stay.")); In re Dixie Broadcasting, Inc., 871 F.2d 1023 (11th Cir. 1989).

The Court in <u>In re Springs Hospitality, Inc.</u>, 2006 WL 2458679 (Bankr. D. Co. 2006), found eight elements that would justify finding that the debtor had filed in "bad faith":

(1)     The debtor has only one asset;

(2)     The debtor has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors;

(3)     The debtor has no employees;

(4)     The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(5)     The debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure;

(6)     The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(7)     The debtor cannot meet current expenses including the payment of personal property and real estate taxes; and

(8)     The debtor has little or no cash flow.

<u>Id.</u> at *3 (citing <u>State Street Houses, Inc. v. New York State Urban Dev. Corp.</u>, 356 F.3d 1345, 1346-47 (11th Cir. 2004); <u>C-TC 9th Ave. P'ship v. Norton Co.</u>, 113 F.3d 1304, 1311 (2d Cir. 1997); <u>Udall v. FDIC</u>, 91 F.3d 1414, 1416 (10th Cir. 1996)).

Ultimately, the <u>In re Springs Hospitality</u> court determined that all eight factors applied and, because the case had been filed in bad faith the secured

creditor was entitled to relief from the automatic stay, and the court would dismiss the case.  Id. at *4-5.

All eight factors are also present in this case:

(1) Debtor's sole asset is the Real Property (and related incidental furnishings etc.) in the Project.

(2) Ke Kailani Partners' secured claim exceeds $29 million.  In contrast, the Debtor has identified unsecured claims totaling only approximately $1.1 million.[49]  Of that $1.1 million, more than $617,000 is represented by the accruing unpaid Association dues.  $565,000 is reported for claims in connection with development of the Project.  That leaves only approximately $7,000 in identified unsecured claims for various other services connected to the Project.

(3) There is no evidence that Debtor has any employees, or any income.  For example, no motions have been filed to pay employees during the bankruptcy.

(4) The Debtor's sole asset – the Real Property in the Project – is the subject of the Foreclosure Decree in the state court.

(5) The Debtor's financial condition is in essence a two-party dispute, between Mr. Fuchs and his LLC on one side, and Ke Kailani Partners on the other side.  The Foreclosure Decree, auction, and related proceedings encompass that dispute.

(6) The Debtor filed the bankruptcy petition literally on the eve of the foreclosure auction.  This auspicious timing evidences Debtor's true intent -- to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights—Foreclosure Decree.

Thus, under all of the identified factors, Debtor's eve-of-foreclosure bankruptcy was filed in bad faith.  And other indicia of "bad faith" factors are present here.

---

[49]  Other than the Hawaii County tax lien.

For example, where bankruptcy is filed when "the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court," or "the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford," such circumstances also point to a bad faith filing.  See In re Laguna, 30 F.3d at 738.734, 738 (6th Cir. 1994).

Here, Mr. Fuchs and Debtor have lost in the state court foreclosure action. To stay the foreclosure auction, they are required to post a bond pending their appeal.  They have not.  Meanwhile, Mr. Fuchs, who guaranteed the mortgage loan, is individually responsible for a deficiency judgment, pursuant to the Foreclosure Decree.  He is therefore an interested party whose interest is adverse to the Debtor, the Debtor's Estate and the Debtor's creditors.  Yet as the Debtor's sole member, Fuchs directed the Debtor's filing of Chapter 11.  Fuchs paid the Debtor's attorneys' fees for the bankruptcy filing.[50]  By orchestrating the Debtor's filing, Fuchs has stalled the foreclosure and frustrated Ke Kailani Partners' (and other creditors) right to have the Property liquidated to pay some or all of the Debtor's and Mr. Fuchs' obligations.

---

[50]    See Exhibit 9, Disclosure of Compensation of Attorney For Debtor, field January 19, 2011 (source of attorneys' compensation is "Sole Member Michael Fuchs").

The filing has prevented determination of any deficiency owed by Fuchs, and pursuit of collection action thereon. The circumstances suggest that Fuchs orchestrated the bankruptcy as a strategy to negotiate release of his personal obligations under the guaranty held by Ke Kailani Partners, while causing ongoing harm to the Debtor's major creditors, Ke Kailani Partners and the Associations. This was all undertaken at the last moment, without any realistic prospective benefit to those creditors.

## IV.    CONCLUSION

Based on the foregoing, Ke Kailani Partners' motion for relief from the automatic stay should be granted, to allow it to proceed with the pending judicial foreclosure action against the Debtor and the Debtor's Property, subject to there not being entry of or enforcement against the Debtor of any deficiency judgment without further order of this Court; and, to the extent there is a stay, to allow Ke Kailani Partners to proceed in the pending appeal filed by the Debtor, including seeking the requirement of the Debtor's posting of a bond during the pendency of the appeal as a condition to stay the foreclosure sale.

Further, under the circumstances, the fourteen day stay imposed by Fed. R. Bankr. P. 4001(a)(3) should be found not to apply, such that any Order granting

this Motion will be enforceable immediately upon its entry, because of the ongoing

deterioration and risk to Lender's interest in the Property with the passage of time.

DATED: Honolulu, Hawaii, January 24, 2011.

*/s/Susan Tius*
SUSAN TIUS

*/s/ Sharon Lovejoy*
TERENCE J. O'TOOLE
SHARON V. LOVEJOY
RICHARD J. WALLSGROVE

Attorneys for KE KAILANI
 PARTNERS LLC

UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

In re                          ) Case No. 11-00019
                               ) (Chapter 11)
KE KAILANI DEVELOPMENT LLC,     )
                               )
        Debtor.                )
_____)

DECLARATION OF BARRY SHAMES IN SUPPORT OF MOTION

I, BARRY SHAMES, hereby declare that the following statements are true to the best of my knowledge, information and belief.

1.    I am, and since January 21, 2010, have been, the Vice President of the Ke Kailani Community Association ("KKCA"). I have reviewed the records and files maintained by Certified Management Hawaii ("CMH"), the management company employed by KKCA, relating to these matters, which records and files are kept by CMH in the ordinary course of business, which records and files Declarant has ready access to, and which records and files and the entries therein were made at or near the time of such acts by person or persons duly authorized to make the same, and based on my review thereof have personal knowledge of and am competent to testify to the matters hereinafter stated and do hereby make this Declaration in support of Ke Kailani Partners LLC's foregoing Motion; each and every statement and

representation of this paragraph shall apply to each and every paragraph hereinafter contained and made a part hereof.

    2.    The records relating to the payment of fees due to KKCA by KE KAILANI DEVELOPMENT, LLC ("Debtor"), the herein debtor-in-possession, reflect that the Debtor has failed to pay amounts due and owing to KKCA, at the times they became due and payable

    3.    The Debtor is the developer of Ke Kailani, a luxury home subdivision containing both KKCA as well as the Association of Villa Owners of Ke Kailani Condominium ("Villa Owners"). The Debtor currently owns 28 single-family home lots (i.e, 28 units). It also owns land planned for eight condominium units and two completed condo units. An additional 10 single-family home lots (10 units) and two condominium units were previously sold by the Debtor.

    4.    The Debtor, by reason of its current ownership, represents approximately 76% percent of KKCA.

    5.    As of the filing of the Debtor's Chapter 11 petition on January 5, 2011, the delinquent amounts owed to KKCA by the Debtor, total $591,059.50. The estimated monthly fees due to KKCA from the Debtor accrue at $1,017.18 per unit, which for the 38 units owned by the Debtor totals $38,652.84 per month.

    6.    The Debtor's prolonged failure to pay its share of fees owed to KKCA has inflicted severe financial constraints on

KKCA forcing KKCA, since July 2010, to draw on its reserves to meet expenses. KKCA's current reserves are $156,595.05.

7. KKCA has drastically reduced the services and maintenance to the common areas in an effort to reduce costs, which common areas include, throughout the property, lush landscaping and extensive sand paths and an ocean front "grotto" with an infinity pool, patio, kitchen and restroom facilities.

8. The condition of the landscaping and facilities has deteriorated and continues to deteriorate because of the Debtor's failure to pay its share of fees resulting in KKCA not having the funds to properly maintain the common areas to the standard of a luxury subdivision.

9. As a practical matter, whoever holds the ownership interests of the Debtor, even if not legally responsible to pay past amounts due to KKCA from the Debtor, because of the Debtor's significant ownership percentage in the subdivision, will have to address providing funds to KKCA to cover the expenses which must be incurred to restore the property to a luxury standard.

10. Based on the foregoing, KKCA's interest in the Debtor's property, including its junior lien secured by the Debtor's property, is not adequately protected and KKCA supports Ke Kailani Partner's Motion seeking relief from the automatic stay to permit proceeding with the pending foreclosure action.

-3-

 

     I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

     DATED: Honolulu, Hawaii, January 24, 2011.

                 _____

                 BARRY SHAMES

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In Re<br><br>KE KAILANI DEVELOPMENT LLC<br><br>         Debtor. | Case No. 11-00019<br>(Chapter 11)<br><br>DECLARATION OF RICHARD J. WALLSGROVE IN SUPPORT OF MOTION; EXHIBITS 1 - 9 |

## DECLARATION OF RICHARD J. WALLSGROVE IN SUPPORT OF MOTION

I, RICHARD J. WALLSGROVE, declare the following to be true and correct under penalty of law:

1.  I am an attorney with the law firm of Starn O'Toole Marcus & Fisher, attorneys for KE KAILANI PARTNERS LLC in the above-entitled matter. I make this declaration based on personal knowledge except where otherwise indicated, and I am competent to testify to the matters stated herein.

2.  Attached hereto as Exhibit 1 is a true and correct copy of the Findings of Fact, Conclusions of Law, and Order Granting Plaintiffs' Motion For Summary Judgment and Decree of Foreclosure Filed April 22, 2010, entered in <u>Bank of Hawaii, et al. v. Ke Kailani Development LLC, et al.</u>, Civil No. 09-1-2523-10 BIA,

1

First Circuit Court (the "Foreclosure Action"), on September 1, 2010, as kept in my firm's files in its regular course of business.

3.     Attached hereto as Exhibit 2 is a true and correct copy of the Judgment filed in the Foreclosure Action on September 1, 2010, as kept in my firm's files in its regular course of business.

4.     Attached hereto as Exhibit 3 is a true and correct copy of the First Amended Judgment filed in the Foreclosure Action on November 15, 2010, as kept in my firm's files in its regular course of business.

5.     Attached hereto as Exhibit 4 is a true and correct copy of excerpted portions of Plaintiffs' Motion for Substitution of Parties filed in the Foreclosure Action on December 6, 2010 (with only Exhibits C and D thereto), as kept in my firm's files in its regular course of business.

6.     Attached hereto as Exhibit 5 is a true and correct copy of the Order Granting Plaintiffs' Motion for Substitution of Parties, Filed December 6, 2010, filed in the Foreclosure Action on December 30, 2010, as kept in my firm's files in its regular course of business.

7.     Attached hereto as Exhibit 6 is a true and correct copy of the Notice of Appeal filed in the Foreclosure Action on December 30, 2010, as kept in my firm's files in its regular course of business.

8.     Attached hereto as Exhibit 7, for the Court's ease of reference, is a true and correct copy of Debtor's Statement of Financial Affairs filed herein as Dkt #10, on January 19, 2011, as kept in my firm's files in its regular course of business.

9.     Attached hereto as Exhibit 8, for the Court's ease of reference, is a true and correct copy of Debtor's Schedules, filed herein as Dkt #9 on January 19, 2011, as kept in my firm's files in its regular course of business.

10.     Attached hereto as Exhibit 9, for the Court's ease of reference, is a true and correct copy of Debtor's Disclosure of Compensation of Attorney for Debtor, filed herein as Dkt # 8 on January 19, 2011, as kept in my firm's files in its regular course of business.

11.     My firm has reviewed the property tax information publicly available on the County of Hawaii's website. According to the information obtained during that review, the past due property tax, interest, and penalties owed to the County of Hawaii on the Debtor's Real Property is $655,146.33. An additional $183,841.80 is due in February 2011, plus additional penalties and interest if not paid at that time.

DATED: Honolulu, Hawaii, January 25, 2011.

_____
Richard J. Wallsgrove